UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO. 08-115-KKC

DELLA YONTS,                                                                                    PLAINTIFF

v.                                             **OPINION AND ORDER**

MICHAEL ASTRUE,
*Commissioner of Social Security,*                                              DEFENDANT

* * * * * * *

This matter is before the Court on the parties' Cross Motions for Summary Judgment.

For the reasons stated below, the Court hereby orders the Plaintiff's Motion for Summary

Judgment **DENIED** and the Defendant's Motion for Summary Judgment **GRANTED**.

I.        **Introduction**

Plaintiff Della Yonts filed an application for supplemental security income on August 9,

2005. [Tr. 46].  Plaintiff was 45 years old at that time, and she alleges that her disability began on

May 1, 1984. [Tr. 46].  Plaintiff alleges disability due to panic attacks, low back pain, and body

pains. [Tr. 55].  Her application was denied initially and upon reconsideration. [Tr. 33-43].  At

Plaintiff's request, an administrative hearing was held before Administrative Law Judge ("ALJ")

Ronald M. Kayser on October 25, 2007, in Hazard, Kentucky. [Tr. 278-303].  Plaintiff appeared

and testified at the hearing, where she was assisted by Brenda Bailey, a non-attorney

representative.  [Tr. 278-303].  On November 28, 2007, the ALJ issued a written decision and

concluded that Plaintiff has not been under a disability within the meaning of the Social Security

Act since the date her application was filed. [Tr. 19-27].  Because the Appeals Council denied

Plaintiff's request for review, the ALJ's decision stands as the Commissioner's final decision and

is now ripe for review under 42 U.S.C. § 1383(c)(3). [Tr. 6-8].

## II.    Discussion

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6ᵗʰ Cir. 2004) (internal quotation marks and citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6ᵗʰ Cir. 1994).  The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6ᵗʰ Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6ᵗʰ Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6ᵗʰ Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6ᵗʰ Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6ᵗʰ Cir. 2005).

### B. Overview of the Process

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a social security disability claimant qualifies as legally disabled, and is thus

deserving of disability insurance benefits and supplemental security income. *See* 20 C.F.R. §

404.1527(e)(1). To make this determination, the ALJ must perform a five-step analysis, as

follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial
> gainful activity" at the time she seeks disability benefits. Second, plaintiff must
> show that she suffers from a "severe impairment" in order to warrant a finding of
> disability. A "severe impairment" is one which "significantly limits . . . physical
> or mental ability to do basic work activities." Third, if plaintiff is not performing
> substantial gainful activity, has a severe impairment that is expected to last for at
> least twelve months, and the impairment meets a listed impairment, plaintiff is
> presumed to be disabled regardless of age, education or work experience. Fourth,
> if the plaintiff's impairment does not prevent her from doing her past relevant
> work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's
> impairment does prevent her from doing her past relevant work, if other work
> exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520,

404.920).

## C. The ALJ's Decision

In the first step of the analysis, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since the application date, August 5, 2005. [Tr. 21]. In the second step, the ALJ

found that Plaintiff suffers from two severe impairments: anxiety and dysthymic disorder. [Tr.

21]. The ALJ also found that Plaintiff suffers from two additional impairments on which her

claim was based: low back pain and body pain. [Tr. 22]. However, he concluded that these

impairments were non-severe. [Tr. 22]. At the next step, the ALJ found that Plaintiff does not

have an impairment or combination of impairments that meets or medically equals a listed

impairment. [Tr. 22]. At the fourth step, the ALJ determined that Plaintiff has the residual

functional capacity to perform a full range of work at all exertional levels but with several non-

exertional limitations.  The ALJ assessed Plaintiffs's mental residual functional capacity and found that she has moderate limitations in her ability to maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, and respond appropriately to changes in the work setting. [Tr. 23].  Based on Plaintiff's hearing testimony and earnings records, the ALJ found that Plaintiff has no past relevant work. [Tr. 26].  In the final step of the sequential five-step analysis, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff can perform despite her limitations. [Tr. 26].  The ALJ based this finding on the testimony provided by the vocational expert at Plaintiff's administrative hearing. [Tr. 26].  In response to a hypothetical question describing an individual with Plaintiff's age, education, work experience, and residual functional capacity, the vocational expert testified that the individual could do a range of unskilled, medium-exertion work, including industrial cleaner or bagger. [Tr. 300-301].  The ALJ therefore concluded that Plaintiff has not been under a disability since the date her application was filed. [Tr. 27].

**D. Analysis**

Plaintiff's arguments are focused upon a single piece of evidence in the record, a medical opinion provided by Dr. Kitty Gish.  Plaintiff argues that the ALJ impermissibly "played doctor" in rejecting Dr. Gish's opinion by interpreting raw medical data and by drawing his own medical conclusions.  For reasons stated below, the Court rejects Plaintiff's argument that concludes that the ALJ's findings were supported by substantial evidence in the record, including inconsistencies in Dr. Gish's records.

**1. Analysis of Dr. Gish's Medical Opinion**

The record indicates that Plaintiff saw Dr. Gish fairly regularly from February of 2002 through May of 2006. [Tr. 193-213]. Although Dr. Gish treated Plaintiff for a number of health issues during that time, it was not until August of 2005 that Plaintiff complained of lower back pain. [Tr. 197]. When Plaintiff complained about her back, Dr. Gish promptly ordered x-rays and an MRI, which were completed that month. [Tr. 257-260]. These tests reflected only minimal degenerative changes in Plaintiff's spine. [Tr. 257-260]. A later x-ray of Plaintiff's hip, taken in February of 2006, indicated mild osteoarthritis. [Tr. 255].

On June 18, 2007, Dr. Gish assessed Plaintiff's functional limitations based on Plaintiff's physical impairments of degenerative disc disease and osteoarthritis of the hip. [Tr. 275-277]. In that assessment, Dr. Gish stated that Plaintiff could lift only ten pounds occasionally and five pounds frequently, she could stand or walk for a maximum of two hours a day, and she could sit only for two hours a day. [Tr. 275].

Plaintiff maintains that the ALJ improperly rejected Dr. Gish's medical opinion for two reasons. First, relying on *Manso-Pizarro v. Secretary*, 76 F.3d 15 (1st Cir. 1996), Plaintiff argues that the ALJ erred by interpreting raw medical data. Second, Plaintiff asserts that the ALJ should have obtained another medical opinion before rejecting Dr. Gish's findings.

In support of her argument that the ALJ erroneously interpreted raw medical data, Plaintiff points to the following language in the ALJ's opinion:

> As for the residual functional capacity dated June 18, 2007 by Dr. Gish that the claimant would be limited to performing only a significantly compromised range of sedentary work, no weight is given to such assessment. Dr. Gish referred to the MRI dated August 2005 as support for her residual functional capacity. *However, the MRI of the lumbar spine showed only minimal degenerative changes at the*

>   *L4-5 and L5-S1 levels, which does not support the significant limitations Dr. Gish*
>   *noted*.

[Tr. 25] (emphasis added).  The ALJ's opinion contains similar language in the section

discussing the severity of Plaintiff's impairments. [Tr. 22].  In both cases, however, the Court

disagrees with Plaintiff's assertion that the ALJ improperly interpreted raw medical data as was

done in *Manso-Pizarro*.  In that case, the First Circuit vacated and remanded a decision in which

the ALJ evaluated medical records and assessed the claimant's functional capacity without the

assistance of a physician or expert.  *Manso-Pizarro*, 76 F.3d 15, 17 (1st Cir. 1996); *see also*

*Bently v. Astrue*, 2008 U.S. Dist LEXIS 66124, at *11 (E.D. Ky Aug. 28, 2008).  Here, however,

the ALJ did not interpret raw medical data, but rather he acknowledged inconsistencies in Dr.

Gish's opinion as required by the regulations.  20 C.F.R. § 404.1527 ("If any of the evidence in

your case record, including any medical opinion(s), is inconsistent with other evidence or is

internally inconsistent, we will weigh all of the evidence and see whether we can decide whether

you are disabled based on the evidence we have.")  As the ALJ noted, Dr. Gish placed significant

functional limitations on Plaintiff's ability to work because of degenerative disc disease and

osteoarthritis, citing the MRI from August of 2005 and the x-ray from February of 2006 as the

medical evidence supporting her opinion. [Tr. 25].  The ALJ found that those test results do not

support such significant limitations as they indicate only minimal degenerative changes to

Plaintiff's spine. [Tr. 25].  Instead of impermissibly "playing doctor" as Plaintiff argues, the

Court concludes that the ALJ identified inconsistencies in Dr. Gish's medical opinion and

properly decided the case based on medical evidence in the record as required.

Plaintiff also argues that the ALJ needed to obtain a medical opinion before rejecting Dr.

Gish's assessment, citing the Seventh Circuit's opinion in *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000).  In that case, the Seventh Circuit ruled that an ALJ impermissibly "played doctor" by analyzing medical test results himself without the assistance of an expert medical opinion.  *Id.* at 781-782.  As later clarified by the Seventh Circuit, "[t]ypical cases of ALJs impermissibly 'playing doctor' are when they either reject a doctor's medical conclusion without other evidence, or when they draw medical conclusions themselves about a claimant without relying on medical evidence." *Back v. Barnhart*, 2003 U.S. App. LEXIS 7116, at *13 (7th Cir. 2003) (unpublished opinion) (internal citations omitted); *Bently v. Astrue*, 2008 U.S. Dist LEXIS 66124, at *10 (E.D. Ky Aug. 28, 2008).  Here, the ALJ did neither.  The ALJ did not reject Dr. Gish's medical conclusion without other evidence.  Rather, he noted that Dr. Gish's opinion was inconsistent with the other medical evidence in the record and discredited it on that basis.  [Tr. 25]. Additionally, the ALJ did not have to draw his own medical conclusions about Plaintiff's functional limitations because he could properly rely on the medical evaluation submitted by Dr. Burns.  As the ALJ noted, Dr. Burns saw Plaintiff shortly after the August 2005 MRI and stated that her physical and orthopedic examinations were within normal limits.  [Tr. 21-22, 98-102]. Accordingly, the Court rejects Plaintiff's argument that the ALJ impermissibly played doctor by rejecting Dr. Gish's June 18, 2007 medical opinion.  The Court now turns to the second and fourth steps of the ALJ's analysis.

**2. The ALJ's Finding of Severe and Non-Severe Impairments**

In the second step of his analysis, the ALJ concluded that Plaintiff has two severe impairments, anxiety and dysthymic disorder, as well as two non-severe impairments, low back pain and body pain. [Tr. 21-22].  Plaintiff argues that the ALJ improperly concluded that

Plaintiff's low back pain and body pain are not severe impairments when considering Dr. Gish's evaluation. The Court need not address this argument. The regulations require the ALJ to continue the disability analysis if the ALJ determines that the claimant has at least one severe impairment. *See generally* 20 C.F.R. § 404.1520. Here, the ALJ found that Plaintiff's anxiety and dysthymic disorder were severe impairments. [Tr. 21]. Accordingly, he continued with the five-step sequential analysis, and properly considered evidence of Plaintiff's non-severe impairments when determining Plaintiff's residual functional capacity. [Tr. 23-25]; 20 C.F.R. § 1520(e) ("[W]e will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record . . . ."). Therefore, the ALJ's finding that Plaintiff's low back pain and body pain are non-severe impairments cannot constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that it was unnecessary to decide whether an ALJ incorrectly determined that the plaintiff's cervical condition was not severe because the ALJ found other severe conditions, continued the disability analysis, and considered the cervical condition when determining the plaintiff's residual functional capacity).

**3. The ALJ's Determination of Plaintiff's Residual Functional Capacity**

After determining that the ALJ applied the correct legal standards in rejecting Dr. Gish's medical evaluation from June 18, 2007, the Court now examines the record to see if substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity. Residual functional capacity reflects the claimants maximum performance level in a work setting despite any physical or mental limitations. 20 C.F.R. § 416.945(a). It is the responsibility of the ALJ to determine this residual functional capacity. *Id.* § 416.946(d). The ALJ is to make this

determination "based on all of the relevant medical and other evidence." *Id.* § 416.945(a)(3).

The ALJ is also to consider "any statements about what [the claimant] can still do that have been

provided by medical sources, whether or not they are based on formal medical examinations," as

well as "descriptions and observations of [the claimant's] limitations from [his or her]

impairment(s), including limitations that result from your symptoms, such as pain . . . ." *Id.* All

of the claimant's impairments are to be considered in determining the residual functional

capacity, including those that are not found to be "severe" within the meaning of the Social

Security Act. *Id.* §§ 416.945(a)(2), 416.945(e).  In addition, all of the claimant's symptoms,

including pain, are considered in determining the claimant's residual functional capacity and

disability, to the extent that these symptoms "can reasonably be accepted as consistent with the

objective medical evidence, and other evidence." *Id.* § 416.929(a).

When considering a claimant's symptoms, the regulations require the ALJ to follow a

two-step process to determine the effect those symptoms have on the claimant's ability to

perform basic work activities.  First, the ALJ must determine if there is an underlying medically

determinable physical or mental impairment as shown by objective medical evidence that could

reasonably be expected to produce the claimant's symptoms.  20 C.F.R. § 416.929(b).  Once the

symptoms are supported by objective medical evidence, the ALJ must then evaluate the intensity,

persistence, and limiting effects of those symptoms on the claimant's ability to do basic work

activities.  *Id.* § 416.929(c)(1).  Because some symptoms may cause a greater level of impairment

than can otherwise be shown by objective medical evidence, additional evidence of those

symptoms should be considered.  *Id.* § 416.929(c)(3).  When considering subjective symptoms,

such as pain, that may be difficult to quantify, an ALJ should consider the following factors to

determine the effect of such symptoms on a claimant's functional limitations:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or have taken to alleviate [the claimant's] pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or [has] received for relief of [his or her] pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or [has] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*Id.*

Plaintiff argues that the ALJ incorrectly determined her residual functional capacity by not taking into account the effect of her disabling low back and body pain. Specifically, she asserts that the ALJ's conclusion is contrary to the medical opinion offered by Dr. Gish on June 18, 2007. As previously addressed in this opinion, this Court has found that the ALJ properly rejected Dr. Gish's assessment of Plaintiff's functional limitations because the assessment was inconsistent with the medical evidence in Dr. Gish's own records and contrary to the medical opinions of other physicians, including Dr. Burns. The ALJ ultimately concluded that Plaintiff's low back pain and body pain do not place any limitations on Plaintiff's residual functional capacity. The Court now looks to see if that conclusion is supported by substantial evidence in the record.

In his written decision, the ALJ properly followed the two-step regulatory process in determining the effect of Plaintiff's symptoms on her residual functional capacity. Although the ALJ did not specifically articulate the first step of this analysis, the Court finds that the ALJ's

decision and the record contain sufficient evidence of medically determinable physical impairments.  Plaintiff complained of low back pain and body pain, and her MRI and x-rays indicated that she had suffered minimal degenerative changes in her spine and mild osteoarthritis in her hip. [Tr. 255, 257-260].  This objective medical evidence establishes Plaintiff's non-severe physical impairments of low back pain and body pain, and these impairments can be reasonably expected to cause Plaintiff's symptoms.

Moving to the second step of the analysis, the ALJ outlined and applied the relevant factors set forth in the regulations for determining the effect of Plaintiff's pain on her ability to perform basic work activities.  [Tr. 24-25].  The ALJ noted that Plaintiff's daily activities include getting up and dressed by herself, cooking, doing household chores, and watching television. [Tr. 25].  The ALJ also noted that Plaintiff drives, goes to the store, carries in her own groceries, and vacuums on a weekly basis. [Tr. 25].  The ALJ then concluded that Plaintiff's activities of daily living are inconsistent with total disability.  [Tr. 25].

Other factors outlined in the regulations further support the ALJ's decision.  As the ALJ noted, Plaintiff takes medication for panic attacks but she reported no adverse side effects. [Tr. 25].  Additionally, Plaintiff's own efforts to alleviate her low back pain and body pain warrant some consideration.  On May 9, 2006, Dr. Gish noted that Plaintiff had seen the neurosurgeons at the Spine and Brain center regarding her low back pain but she had not decided whether or not to follow through with recommended epidural steroid injections. [Tr. 193].  Three months later, Dr. Gish noted that Plaintiff had been referred to the pain clinic but had cancelled her appointments there. [Tr. 192].  He added that she was not going to pain management at that time. [Tr. 192].

The ALJ's determination of Plaintiff's residual functional capacity is also supported by

Dr. Burns' evaluation from September 11, 2005.  In that evaluation, Dr. Burns acknowledged

Plaintiff's complaints about back and body pain, and noted that she was taking anti-inflammatory

with fair relief. [Tr. 100].    Dr. Burns' noted that Plaintiff's physical and orthopedic

examinations were within normal limits and ultimately concluded that Plaintiff has the ability to

perform activities involving sitting, standing, moving about, lifting, carrying, and handling

objects. [Tr. 100].  Considering both Dr. Burns' evaluation and the ALJ's analysis of Plaintiff's

symptoms, the Court concludes that substantial evidence supports the ALJ's determination of

Plaintiff's residual functional capacity.

## III. Conclusion

Accordingly, the Court holds that substantial evidence supports the ALJ's finding that

Plaintiff has not been under a disability as defined by the Social Security Act since the date her

application was filed.  Since the ALJ's decision applies the correct legal standards and is

supported by substantial evidence, the Court must uphold it.  *See Warner*, 375 F.3d at 390.

Dated this 25th day of June, 2009.

**Signed By:**

**Karen K. Caldwell**

**United States District Judge**